## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JANE DOE,

        Plaintiff,

v.                                                              No. CIV 19-1148 RB/CG

FORMER CORRECTIONAL OFFICER
BENNY CHEE, in his individual capacity;
FORMER WARDEN ROBERTA LUCERO-
ORTEGA, in her individual capacity;
SERGEANT RANDY GIFFORD, in his
individual capacity; and MAJOR GARY
TRUJILLO, in his individual capacity,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Benny Chee, formerly a correctional officer (CO) at the Western New Mexico Correctional Facility (WNMCF), used his position of power to coerce Plaintiff Jane Doe to engage in sexual intercourse. Chee later pled guilty to Criminal Sexual Penetration in the Third Degree (Force or Coercion) in violation of N.M. Stat. Ann. § 30-09-11(F). Doe filed suit against Chee, former warden Roberto Lucero-Ortega, and two other WNMCF employees, Randy Gifford and Gary Trujillo, all in their individual capacities.[1] At issue in this Opinion is Lucero-Ortega's motion to dismiss on the basis of qualified immunity. For the reasons discussed below, the Court will grant the motion.

## I.      Background

<u>The sexual assault</u>

Plaintiff Jane Doe was incarcerated at WNMCF in Grants, New Mexico. (Doc. 1-A

---

[1] On April 15, 2020, the parties filed a Rule 41(a)(1)(A)(ii) Stipulation of Dismissal of all claims against Gifford and Trujillo. (Doc. 32.)

(Compl.) ¶ 1.) Defendant Roberta Lucero-Ortega was the warden of WNMCF, and Chee was

employed as a CO. (*Id.* ¶ 2.) In his capacity as a CO, Chee illegally coerced Doe into having oral

sex and/or sexual intercourse with him on four occasions, the last two times violently. (*See id.* ¶¶

10–49.) Doe alleges that "other correctional officers had seen" her in an unauthorized area with

Chee, but no one ever intervened or reported the misconduct. (*Id.* ¶¶ 50–54.) Doe wanted to ask

for help, but "she was scared and unsure who to trust[] because she knew that victims of sexual

abuse at WNMCF were often blamed and retaliated against by prison staff." (*Id.* ¶¶ 54–55.)

On March 21, 2017, due to information shared after a physical altercation between Doe

and another inmate, WNMCF staff began an investigation into Chee. (*See* Doc. 21-A.) On March

22, 2017, WNMCF called in the New Mexico State Police, who conducted an independent criminal

investigation and arrested Chee that evening. (*See* Doc. 22-B.) On that same day, Doe learned that

she was pregnant with Chee's baby.[2] (*See* Compl. ¶ 57; *see also* Doc. 21-A.) Chee eventually pled

guilty to Criminal Sexual Penetration in the Third Degree (Force or Coercion) in violation of N.M.

Stat. Ann. § 30-09-11(F). (Compl. ¶ 68; Doc. 44-7.)

Prison Rape Elimination Act (PREA)[3] training at WNMCF

Female inmates were moved to WNMCF in October 2016. (*See* Doc. 44-3 at 113:1–4.) In

2016, Jillian Shane was the PREA Coordinator for the New Mexico Corrections Department

(NMCD) and was responsible for "ensuring that all [state] prison facilities were in compliance

with the [PREA]." (*See* Docs. 44 at 9; 44-2; 44-3 at 111:16–23.) Cody Dunning was the PREA

Coordinator for WNMCF and was "responsible for following best practices in conformance with

---

[2] Doe miscarried in prison in May 2017. (Doc. 1-A (Compl.) ¶¶ 61–63.)

[3] "Congress enacted [the] PREA with the purpose of implementing standards and policies to prevent prison rape and to 'protect the Eighth Amendment rights of Federal, State, and local prisoners.'" *Does 8–10 v. Snyder*, 945 F.3d 951, 955–56 (6th Cir. 2019) (citing 34 U.S.C. § 30302 (formerly 42 U.S.C. § 15602)); *see also* 28 C.F.R. § 115.5–115.501.

[the] PREA . . . ." (Doc. 44-3 at 111:24–112:6.) Shane emailed Lucero-Ortega, Dunning, and others on September 15, 2016, regarding the transition of female inmates to WNMCF. (Doc. 44-2.) Shane stated that the facility was "required to conduct various trainings" regarding the "switch in gender of the population . . . per [28 C.F.R. §] 115.31." (*See id.*) Shane attached a training entitled "Dynamics of Female Offenders" and asked the recipients to ensure that "all staff" received the training to be in "compliance with the Standard." (*Id.*) Dunning testified on August 20, 2020, that he could not recall having seen the Dynamics of Female Offenders training.[4] (*See* Doc. 44-4 at 127:7–13.)

Doe also submits a December 2016 email from Shane to Anthony Romero, Deputy Director of Adult Prisons, about "screening audits." (*See* Doc. 44-5.) Shane stated that "since we started this audit in June, some facilities[, including WNMCF,] have been delinquent EACH month." (*Id.*) Romero emailed Lucero-Ortega and others the same day and stated that the wardens of noncompliant facilities would need to address the "serious violations" with their staff and take corrective action with those responsible. (Doc. 44-6.) Lucero-Ortega explains that screening audits "assess risk of sexual victimization" and are a PREA requirement. (Doc. 45 at 5 (citing 28 C.F.R. § 115.41).) The PREA requires facilities to screen new inmates "for potential vulnerabilities or tendencies of acting out with sexually aggressive behavior." (*Id.* (quoting Doc. 45-C at 5).)

Lucero-Ortega submits six pages of a 117-page 2018 PREA Audit Report of WNMCF. (Doc. 45-D.) A section entitled Summary of Corrective Action Taken notes that "All inmates at the facility were provided PREA comprehensive education during April 2018 . . . because many of the inmates interviewed indicated they did not recall receiving the comprehensive education."

---

[4] Doe submitted deposition testimony from Lucero-Ortega and Dunning obtained from another lawsuit arising from an alleged rape at WNMCF. (*See* Docs. 44-3; 44-4 (citing *Jaramillo v. W. N.M. Corr. Fac.*, D-101-CV-201901046 (1st Jud. Dist. N.M.)).)

(*Id.* at 4.) This section also includes information about screening audits. (*See id.*) The Report states that "All staff responsible to conduct the risk screening were provided additional training, to ensure a thorough understanding of what is required." (*Id.*)

The Report summarizes that "it is evident that staff at WNMCF has been working toward compliance with the PREA standards. Because of this hard work and actions taken by the facility and central office, the facility was . . . in compliance with all standards after the corrective action period." (*Id.* at 3.) The report reveals that of the 146 employees then working at WNMCF, 23 had not received PREA training "as required in the agency's policy . . . creating a deficiency of 15.8%." (*Id.* at 6.) The facility conducted the necessary training of those individuals in April and May 2018, which allowed WNMCF to be in compliance with the PREA at the conclusion of the audit. (*See id.*)

Consequences of inappropriate relationships between inmates and COs

Lucero-Ortega testified that inmates were not subject to charges or sanctions for having a sexual relationship with a CO. (Doc. 44-3 at 166:16–167:23.) Inmates could be charged and sanctioned for engaging in an "inappropriate relationship" with a CO, which covered a wide range of conduct, such as receiving contraband from a CO or for having a family member on the outside engage in a relationship with a CO. (*See id.*) Dunning, on the other hand, testified that an inmate *can* be disciplined for having a romantic or sexual relationship with a CO under the charge of "inappropriate relationship." (*See* Doc. 44-4 at 189:22–190:2.) Dunning stated that while the CO would be "held to a high standard because of the [PREA,]" the inmate would also be disciplined and sanctioned if an investigator could "prove that she initiated" the misconduct. (*Id.* at 191:7–13, 192:18–24, 193:17–23, 194:2–5.) Dunning confirmed that this was his opinion as the PREA coordinator. (*Id.* at 191:14–16, 193:24–194:1.)

4

Procedural history

Doe filed suit in New Mexico state court, and Defendants removed it to federal court on December 6, 2019. (*See* Doc. 1.) Relevant to the motion under consideration, Doe asserts that Lucero-Ortega "fostered a culture at the prison that embolden[ed] and empower[ed] correctional officers to use their positions of power to sexually abuse women in NMCD custody." (*Id.* ¶ 69.) She alleges that "sexual harassment, coercion, and assault by correctional officers at WNMCF frequently [went] unreported because the victims . . . [were] afraid that they [would] be retaliated against for reporting or cooperating in investigations into abuse by officers." (*Id.* ¶ 70.) Moreover, women who reported sexual assault or harassment were "often forced to remain in close contact with and under the control of their abusers" or were "punished for . . . having 'inappropriate relationships' with their abusers." (*Id.* ¶¶ 71–72.) Doe alleges that "offending officers are often serial offenders because they know that women cannot leave the facility and will remain under their control." (*Id.* ¶ 73.) She asserts that:

> [Lucero-Ortega] fostered a sexually abusive culture by:
> a.   negligently hiring, training, supervising, and retaining correctional officers who commit violence, harassment, and abuse against women in NMCD custody;
> b.   failing to enforce existing policies that, upon information and belief, were enacted for the purpose of protecting individuals in NMCD custody from being taken advantage of, victimized and abused;
> c.   failing to maintain sufficient camera placement around WNMCF, including failing to repair broken or non-functional cameras placed around the prison;
> d.   failing to properly screen correctional officers entering WNMCF, allowing them to bring special items to curry favor with and/or bribe certain prisoners;
> e.   allowing officers such as Defendant Chee to have extended and unsupervised one-on-one time with prisoners;
> f.   failing to follow PREA protocols and procedures;
> g.   refusing to keep prisoners' PREA grievances and details of resulting investigations confidential, leaving victims open to retaliation and further harassment from correctional officers and other prisoners, thereby chilling prisoners' ability to report abuse in the first place; and

      h.      other acts, omissions, customs, and practices in willful, deliberately indifferent, and/or reckless disregard of the constitutional rights of women in WNMCF custody.

(*Id.* ¶ 74.) She also asserts that she was harassed and abused by numerous officers for cooperating in the investigation into Chee's conduct. (*Id.* ¶ 77.) Finally, she alleges that "numerous WNMCF officers have been investigated by the state police for sexual misconduct involving prisoners" that have led to charges of "felony crimes for physically and sexually assaulting women prisoners." (*Id.* ¶¶ 78–79.) She names four other former COs who were so charged in June 2017, August 2017, January 2018, and March 2018. (*Id.* ¶ 80.) Doe brings two claims against Lucero-Ortega under 42 U.S.C. § 1983: (1) Count II: Failure to Protect in violation of the Eighth Amendment (*id.* ¶¶ 93–107); and (2) Count III: Supervisory Liability (*id.* ¶¶ 108–14).

     Defendants moved to dismiss Counts II and III on March 10, 2020. (Doc. 21.) Because Defendants attached evidence outside of the Complaint to their motion (*see* Docs. 21-A–B), Doe sought limited written discovery on the issue of qualified immunity (*see* Doc. 28). Chief United States Magistrate Judge Carmen Garza granted the motion and ordered Doe to respond to the motion to dismiss within 14 days after receiving the requested discovery. (*See* Doc. 29.) On September 25, 2020, Doe timely responded, attaching several exhibits to her response. (*See* Doc. 44.) The motion is now fully briefed. (Docs. 21; 44; 45.)

## II.    Legal Standards

### A.    Motions to Dismiss under Rule 12(b)(6)

     In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted). To survive a motion to dismiss, the complaint does not need to

contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citation omitted).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Armstrong v. N.M. Disability Determination Servs.*, 278 F. Supp. 3d 1193, 1207 (D.N.M. 2017) (citing Fed. R. Civ. P. 12(d)). "When matters outside of the pleadings are presented to a court on a motion to dismiss, 'courts have broad discretion in determining whether or not to accept materials beyond the pleadings.'" *Id.* (quoting *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998)). "A court should convert a motion to dismiss into a motion for summary judgment if the court considers matters outside of the pleadings, but failing to do so 'is harmless if the dismissal can be justified under Fed. R. Civ. P. 12(b)(6) standards without consideration of the matters outside the pleadings.'" *Id.* (quoting *Lowe*, 143 F.3d at 1381).

### B.   Motions for Summary Judgment

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018) (quoting *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus*

*Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* (quotation and citations omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in her favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

### C.    Qualified Immunity

The Court reviews summary judgment motions based on a qualified immunity defense somewhat differently. *See Halley*, 902 F.3d at 1144. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). "A constitutional right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *Id.* (citation omitted). "Generally, 'existing precedent must have placed the statutory or constitutional question beyond debate' to clearly establish a right." *Id.* (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "The question is not whether a 'broad general proposition' was clearly established, but 'whether the violative nature of particular conduct

[was] clearly established.'" *Id.* (quoting *Redmond*, 882 F.3d at 935) (internal quotation marks omitted).

"If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . . ." *Id.* (quoting *Koch*, 660 F.3d at 1238). And while the "Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, 'a plaintiff's version of the facts must find support in the record.'" *Koch*, 660 F.3d at 1238 (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)). If the plaintiff's "version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it,' then [the Court] 'should not adopt that version of the facts.'" *Halley*, 902 F.3d at 1144 (quoting *Thomson*, 584 F.3d at 1312).

## III.   Analysis

### A.   The Court will analyze the motion under the standards for motions to dismiss and motions for summary judgment.

The Court begins by commenting on the somewhat garbled procedural posture in which it finds this motion. Defendants filed a "motion to dismiss" after they filed their answers.[5] (Doc. 21.) Confusingly, Defendants included the legal standards for both motions to dismiss and motions for summary judgment, asserted numbered factual allegations seemingly in accordance with D.N.M. LR-Civ. 56.1, and attached exhibits outside of the Complaint. (*See* Docs. 21 at 2–5, 9–11; 21-A; 21-B.) The Court might have expected Doe to file a motion for discovery under Rule 56(d). Instead, Defendants filed an unopposed motion to stay discovery and to permit limited written

---

[5] While the parties both refer to the Rule 12(b)(6) "motion to dismiss" standard, Defendants filed their motion after they filed their answers. (*See* Docs. 6; 15; 21.) "Because Defendants[] filed their motion after they filed their answer, their motion may be treated as one for judgment on the pleadings." *Lowe*, 143 F.3d at 1381 n.5. Regardless, the standard for motions to dismiss and motions for judgment on the pleadings is the same, *see Atl. Richfield Co.*, 226 F.3d at 1160, as is "the standard for converting either motion to a motion for summary judgment . . . ." *Lowe*, 143 F.3d at 1381 n.5 (citing Fed. R. Civ. P. 12(c)).

discovery related to their motion. (*See* Doc. 28.) Judge Garza granted the motion. (Doc. 29.) Doe then filed a response—also including the standards for motions to dismiss and motions for summary judgment, asserting her own numbered factual allegations, and attaching exhibits. (Doc. 44 at 4–5, 7–12.) She objects to one of Defendants' exhibits as "hearsay evidence outside of Plaintiff's Complaint"[6] and does not address the last 6 of their 14 facts. (Doc. 44 at 6–7.) Similarly, Lucero-Ortega does not specifically respond to Doe's factual allegations. (*See* Doc. 45.) *See also* D.N.M. LR-Civ. 56.1(b). She also attempts to explain away several of Doe's exhibits in her reply brief without attaching a supporting affidavit. (*See id.* at 4–8.) In short, the briefing on this matter has left much to be desired.

Because of the confusing posture of Lucero-Ortega's motion, the Court will analyze the matter under both standards. Under either standard, Doe has not alleged facts or submitted evidence to demonstrate Lucero-Ortega's deliberate indifference.

## B. Doe fails to allege facts necessary to show deliberate indifference.

Doe asserts Eighth Amendment claims pursuant to 42 U.S.C. § 1983 for failure to protect and for supervisory liability.[7] Under the Eighth Amendment, prison officials are charged with providing inmates with "humane conditions of confinement—to include 'reasonable measures to

---

[6] To the extent that Doe objects to the content of the exhibit because it involves "prison rumors" and "attempts to discredit" her, the Court does not admit the exhibit for the truth of the testimony offered by the inmates interviewed, but only to establish that WNMCF opened an investigation.

[7] Lucero-Ortega first argues that Doe's Complaint is not sufficiently specific because most of her allegations sound against "Defendants" collectively. (*See* Doc. 21 at 16 (discussing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008)).) Doe disagrees, noting that Defendants were all supervisors and presumably subject to the same theory of liability, making *Robbins* inapposite. (*See* Compl. ¶ 2; Doc. 44 at 22 (discussing *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008)).) The Court finds that while the Complaint's allegations are generally sufficient to put Lucero-Ortega on notice of an Eighth Amendment claim, Doe fails to adequately delineate which allegations form the bases of the two counts—failure to protect and supervisory liability—both of which she brings under the Eighth Amendment. Rather, the allegations underlying these two headings are conclusory. (*See* Compl. ¶¶ 93–114.) Even in response to Lucero-Ortega's argument on this point, Doe merely refers to paragraph 74, which "outlines the ways in which Defendants fostered [the] dangerous culture" at WNMCF. (Doc. 44 at 16.) She fails to distinguish what conduct relates to each claim, lumping the two claims together in her response. (*See* Doc. 44 at 12–24.)

guarantee the safety of the inmates.'" *Thorn-Freeman v. Valdez*, No. CV 20-448 JAP/GJF, 2020 WL 5369063, at *3 (D.N.M. Sept. 4, 2020) (quoting *Gray v. Ade*, 2020 WL 3121012, at *4, 818 F. App'x. 792 (10th Cir. June 12, 2020)). "This includes a duty to protect inmates from sexual assault." *Id.* (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards.")).

In Count II, Doe asserts a "failure to protect" claim under the Eighth Amendment. (Compl. ¶¶ 93–107.) She alleges that Lucero-Ortega "failed to protect [her] from sexual assault when [she] created a dangerous environment rife with sexual abuse at WNMCF." (*Id.* ¶ 97.) To make out a claim under the Eighth Amendment for failure to protect, a plaintiff must show: (1) she "'is incarcerated under conditions posing a substantial risk of serious harm[,]' and (2) '. . . the prison official has a sufficiently culpable state of mind, i.e., that he or she is deliberately indifferent to the inmate's health or safety.'" *Thorn-Freeman*, 2020 WL 5369063, at *3 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). "[I]t is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *Keith v. Koerner* (*Keith I*), 707 F.3d 1185, 1188 (10th Cir. 2013) (citations omitted).

In Count III, Doe asserts an Eighth Amendment claim for supervisory liability pursuant to § 1983. (Compl. ¶¶ 108–14.) Because there is no respondeat superior liability under § 1983, Doe must show that Lucero-Ortega "*personally* violated her constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (citing *Keith v. Koerner*, 843 F.3d 833 (10th Cir. 2016) (*Keith II*)). To do so, Doe must establish an "affirmative link" between Lucero-Ortega and the constitutional violation. *Id.* (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). "This 'affirmative link' has had three related, indistinct prongs in [Tenth Circuit] case law: '(1) personal involvement, (2) sufficient causal connection, and

(3) culpable state of mind.'" *Keith I*, 707 F.3d at 1188 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195, 1199 (10th Cir. 2010)). The third prong—culpable state of mind—can be established by showing that the official "acted with deliberate indifference." *See Perry*, 892 F.3d at 1122 (quotation omitted); *see also Thorn-Freeman*, 2020 WL 5369063, at *4.

Lucero-Ortega focuses her argument on deliberate indifference, the element common to both claims. She argues that the Complaint fails to assert specific factual allegations to show that she was aware of the risk of a constitutional injury. (*See* Doc. 21 at 16.) The deliberate indifference standard includes a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Doe must allege facts to show that Lucero-Ortega "knew of and disregarded 'an excessive risk" of sexual abuse. *See Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837). Doe argues that she has and relies on reasoning in *Keith II*, where the Tenth Circuit reversed the grant of summary judgment in favor of the warden of the Topeka Correctional Facility (TCF). (*See* Doc. 44 at 14 (discussing 843 F.3d 833).) At this stage of the analysis, however, the Court finds it more appropriate to examine *Keith I*, which involved the warden's motion to dismiss. *See* 707 F.3d 1185.

In *Keith*, a vocational training program instructor unlawfully engaged in sexual acts with the plaintiff, a female inmate at TCF in 2007. *Keith I*, 707 F.3d at 1187. The plaintiff alleged that the instructor and the warden "created and allowed a policy or culture of sexual misconduct at TCF which placed her at substantial risk of harm, failed to take reasonable measures to abate the culture of sexual misconduct, and were deliberately indifferent to this substantial risk of harm." *Id.* She alleged "facts indicating previous incidents of . . . sexual misconduct . . . , inconsistent disciplinary responses to such incidents, structural policy problems at TCF, and a lack of appropriate training programs." *Id.* She also attached a 2010 Kansas Legislative Post Audit Report to her complaint

"that contained multiple findings regarding [sexual misconduct] at TCF during and subsequent to her incarceration." *Id.* at 1187, 1189. The Tenth Circuit found that the plaintiff's Eighth Amendment claim against the warden was plausible because her "complaint refer[red] to facts, primarily from the Audit Report, that could support a conclusion that [the warden] was aware of multiple incidents of unlawful sexual conduct at TCF" including "at least 54 incidents of sexual misconduct . . . between 2005 and 2009 and . . . a 2005 lawsuit over strip searches at TCF, suggesting that [the warden] may have had knowledge of these accounts." *Id.* at 1189. The court also noted the plaintiff's allegations, which were substantiated by the Audit Report, of improper investigations and inconsistent discipline in response to inmate's complaints of sexual misconduct. *Id.* Moreover, the plaintiff cited the Audit Report's determination that TCF's policy decisions "not to address known problems with the vocational training program and the insufficient use of cameras to monitor inmates and staff [] made TCF 'ripe for staff misconduct.'" *Id.*

The factual allegations in *Keith I* are far more specific than those asserted in Doe's Complaint. In *Martinez v. Padilla*, the court examined a complaint much like Doe's and found that it "deploy[ed] formulaic conclusions rather than the substantial factual allegations necessary to 'nudge[] her claims beyond the conceivable to the plausible.'" No. CV 19-889 JCH/GJF, 2020 WL 3542289, at *10 (D.N.M. June 30, 2020), R&R adopted, 2020 WL 3972732 (July 14, 2020) (quoting *Keith I*, 707 F.3d at 1188). The complaint in *Martinez* alleged:

> (1) "Defendants have fostered a culture that emboldens and empowers correctional officers to use their positions of power to sexually abuse" inmates, (2) assaults go unreported because victims will not be taken seriously and are afraid of retaliation, and (3) "even after reporting sexual assault allegations and harassment . . . [inmates] are often forced to remain in close contact with and under the control of their abusers."

13

*Id.* These are almost identical to allegations in Doe's Complaint. (*See* Compl. ¶¶ 69 ("Defendants . . . fostered a culture at the prison that emboldens and empowers [COs] to use their positions of power to sexually abuse [inmates]"), 70 (sexual abuse "frequently goes unreported because the victims . . . are afraid that they will be retaliated against for reporting" it), 71 ("after reporting sexual assaults and harassment by [COs], [inmates] are often forced to remain in close contact with and under the control of their abusers").) And as in *Martinez*, Doe "conspicuously fails to allege that any instances of sexual assault occurred at [WNMCF] *before*" Chee assaulted her. *See Martinez*, 2020 WL 3542289, at *10. The four listed charges of sexual misconduct by other COs at WNMCF are not enough to save Doe's Complaint, because they all occurred *after* Chee's assault. (*See* Compl. ¶ 80.) Moreover, Doe fails to make any allegations that Lucero-Ortega had reason to know that there were faults with camera placement or repair, that COs were not properly screened for contraband, or that PREA protocols and procedures had not been properly followed. (*See id.* ¶ 74.) Nor does Doe allege that these failures led to reported sexual assaults before her own. In contrast to *Keith I*, "where *numerous allegations* had been made *prior* to the incident in question and the warden had expressed concern over sexual assaults, [Doe's] conclusory and threadbare allegations make it impossible to infer that [Lucero-Ortega] acted with deliberate indifference." *See Martinez*, 2020 WL 3542289, at *10.

Nor does Doe "point to a policy that discounts inmate allegations [or] . . . allege that one even exists, let alone allege an instance of this occurring prior to" her own assault." *Id.* (citing *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) ("A plaintiff must . . . identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violations.")). Doe simply generalizes that Lucero-Ortega negligently hired, trained, supervised, and retained COs and failed to enforce unidentified policies. (Compl. ¶ 74(a)–(b).)

These allegations are conclusory and inadequate to carry her burden. "[W]ithout factual (and non-conclusory) allegations of prior [misconduct,]" the Complaint "falls well short of adequately pleading the mental state required to support a supervisory liability claim" or a failure to protect claim. *See Martinez*, 2020 WL 3542289, at *10. "And simply proffering allegations that other courts have found to be dispositive"—*e.g.*, alleging that the defendants "fail[ed] to maintain sufficient camera placement"—"but then failing to plead even the basic underlying supporting facts that those courts relied on does not turn [Doe's] allegations into a plausible claim." *See id.*

Reading the facts in a light most favorable to Doe, the Court finds that she has failed to adequately assert allegations to show Lucero-Ortega was deliberately indifferent. Consequently, her Eighth Amendment claims fail, and the motion to dismiss is granted.

### C.   Doe does not submit evidence sufficient to withstand summary judgment.

Considering the record evidence, the Court finds that Doe fails to create a factual dispute regarding deliberate indifference. Doe submits several exhibits that she argues provide support for her claims. First, she submits an email from Shane, the state PREA Coordinator, regarding a training necessary for all WNMCF staff. (*See* Docs. 44-2; 44-8.) Dunning, WNMCF's PREA Coordinator, later testified that he did not remember the training. Yet Doe offers no evidence to show that WNMCF was deficient regarding this specific training or any other PREA training during the relevant time period. And while the PREA Audit Report reveals that there were some deficiencies in training that were rectified by the end of the reporting period,[8] Doe fails to submit evidence to show that Lucero-Ortega was aware of any deficiencies.

---

[8] Additionally, the reporting period closed after the assault here, and it is not clear what dates the 2018 Audit Report covered. (*See* Doc. 45-D.)

Next, she presents evidence to show Dunning believed that an inmate should be disciplined for engaging in a sexual relationship with a CO if the inmate initiated the relationship. Yet, Lucero-Ortega testified that inmates would *not* be charged for engaging in sexual relationships with COs. (Doc. 44-3 at 166:23–167:2.) Instead, the "inappropriate relationship" charge could be brought for other conduct, including asking a CO to bring in contraband, or for a CO engaging in a relationship with an inmate's relative. (*Id.* at 167:11–23.) Doe fails to allege or demonstrate that Lucero-Ortega had any knowledge that Dunning believed inmates should be disciplined for engaging in sexual relationships with COs, or even that Dunning's belief was carried out in investigations by others.[9]

Finally, Doe relies on an email thread between Shane and the Deputy Director of Adult Prisons regarding WNMCF's deficiency in screening audits. (Docs. 44-5–6.) Yet Doe fails to connect these screening audits to Chee's misconduct, to CO training, or to any alleged environment that allowed sexual misconduct to occur.

In sum, while Doe submits evidence she contends supports her claims, she has not adequately developed an argument to connect the evidence to any alleged deliberate indifference on the part of Lucero-Ortega. Again, Doe relies on the Tenth Circuit's decision in *Keith II*. Yet the *Keith* plaintiff submitted evidence that demonstrated the warden "failed to take reasonable steps to alleviate known risks within TCF." *Keith II*, 843 F.3d at 849. The warden "implemented policies to address . . . sexual misconduct[,] but" the evidence allowed "a reasonable inference that there was no corresponding supervision or meaningful threat of discipline." *Id.* The warden "did not credit inmates' testimony" and "presumptively accepted his employees' word and designated most claims as unsubstantiated." *Id.* The evidence showed that the warden "endorsed a policy that weighed employee testimony more favorably than an inmate's, even when the employee refused

---

[9] Dunning testified that he was "not an investigator." (Doc. 44-4 at 193:5–6.)

to take a polygraph and the inmate's polygraph results corroborated her allegations." *Id*. Doe has simply not provided evidence that begins to approach that in *Keith II*. There is no evidence of prior sexual misconduct and no evidence to support an inference that Lucero-Ortega was aware of and ignored circumstances that posed a risk of sexual assault. While the "Court must construe the facts in the light most favorable to the plaintiff as the nonmoving party, 'a plaintiff's version of the facts must find support in the record.'" *Koch*, 660 F.3d at 1238 (quoting *Thomson*, 584 F.3d at 1312). Doe's version of the facts does not find support in the record.

      **D.**    **Lucero-Ortega is entitled to qualified immunity.**

Because Doe fails to establish deliberate indifference, she has not shown that Lucero-Ortega violated her Eighth Amendment rights. Accordingly, Lucero-Ortega is entitled to qualified immunity. *See Halley*, 902 F.3d at 1144.

      **THEREFORE,**

      **IT IS ORDERED** that Defendants' Motion to Dismiss on the Basis of Qualified Immunity (Doc. 21) is **GRANTED**. The Court will **DISMISS WITH PREJUDICE** Count II (failure to protect) and Count III (supervisory liability).

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE